FILED
2025 Dec-10  AM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JAMES GOODE, individually and on behalf of all similarly situated persons,<br><br>　　Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>　　Defendant. | **CLASS ACTION COMPLAINT**<br><br>Case No.<br><br><br>Jury Trial Demanded |

Plaintiff, James Goode, individually and on behalf of a class of similarly situated persons, entities, and businesses ("Plaintiff"), through undersigned counsel, files this Class Action Complaint against the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Plaintiff files this class action requesting relief for himself and all other similarly situated Alabama automobile insurance customers or former customers of State Farm, whose vehicle total loss claims were paid by State Farm using a CCC One Market Valuation Report ("CCC One Report").

2. Plaintiff seeks compensatory damages and other appropriate remedies resulting from State Farm's systematic and uniform practice of artificially reducing

the retail cost of comparable vehicles used in the calculation of total loss claim payments, which resulted in State Farm avoiding payment of the full and correct amount for his vehicle total loss claims.

3.      When valuing vehicle total loss claims, it is improper for insurance companies to undervalue and underpay the claims by manipulating the data used to value the vehicles. State Farm uses software designed and licensed by CCC Information Services, Inc.,[1] to manipulate data to underpay total loss claims.

4.      Under State Farm's uniform auto insurance policy issued to Alabama residents, when an insured sustains a total loss of a covered vehicle, State Farm is required to pay the pre-accident actual cash value.

5.      Under Alabama law, the actual cash value of total loss vehicles is determined by using the retail cost of comparable vehicles.

6.      Instead of using the retail cost, State Farm uses a total loss valuation methodology, which systematically reduces the retail cost of comparable vehicles to arrive at a "Base Value" of the total loss vehicle. *See* Ex. A at 1, 9 & 10.

7.      The reduction in cost of comparable vehicles by State Farm is illegal, unsupported by reliable industry standards, and arbitrary. Tellingly, State Farm applies the same reduction in cost to each comparable vehicle regardless of the

---

[1] The CCC One Market Valuation Report presented to Plaintiff, James Goode, by State Farm for the total loss of his 2008 Toyota Tundra is attached here as Exhibit A.

differences in mileage, options, or equipment. *See* Ex. A at 9 & 10. The deduction in cost of comparable vehicles is not connected to or in any way aligned with the condition of the total loss vehicle.

8.    State Farm's systematic practice of reducing the retail cost of comparable vehicles in the calculation of vehicle total loss payments does not comply with industry standards in Alabama.

9.    The purpose of State Farm's systematic vehicle total loss claim business practice is clear, as State Farm is now the largest motor vehicle insurance carrier in the United States, and the financial benefit of the company's systematic reduction in payment of all total loss claims is staggering.

10.    Plaintiff, James Goode, files this class action on behalf of himself and all other similarly situated persons, businesses, or entities insured now or previously under an Alabama State Farm automobile policy who were subjected to this total loss underpayment scheme, against the Defendant in violation of the automobile policy contract, and the implied covenant of good faith and fair dealing inherently therein.

11.    This case is not about State Farm's determination of the actual cash value of the Plaintiff or any class member's specific vehicle total loss claim. This case is about State Farm's systematic, class-wide, arbitrary reduction of the cost of comparable vehicles to artificially reduce the contractual amount it is required to pay

for vehicle total loss claims in Alabama.   The disputed amount is specifically listed on the Plaintiff[2] and each proposed class member's CCC One Report received from State Farm.

12.    If State Farm's application of its so-called "condition adjustment" to comparable vehicles in calculating the amount required to pay vehicle total loss claims is determined to be a breach of its insurance contract, resolution of this litigation can be accomplished in one stroke. If Plaintiff is right, then State Farm determines actual cash value in a total loss not by market value, but by an artificial, downwardly skewed, and deflated market of its own invention, and is therefore in breach of the insurance contract.

## PARTIES

13.    Plaintiff, James Goode, is a citizen and resident of Lawrence County, Alabama and at all relevant times herein was insured under a policy of insurance issued by the Defendant, State Farm. He brings this action individually and on behalf of other similarly situated persons and businesses as defined herein who are citizens and residents of the State of Alabama or were citizens and residents at the time they made a vehicle total loss claim with State Farm.

---

[2] State Farm deducted $929.00 from the retail cost of each comparable vehicle used in valuing Plaintiff James Goode's total loss claim.  See. Ex. A at 9.

4

14.    Defendant, State Farm Mutual Automobile Insurance Company, is a foreign corporation doing business in the State of Alabama and licensed with the Alabama Department of Insurance. Defendant, State Farm Mutual Automobile Insurance Company, is domiciled in Illinois with its principal statutory and administrative office located at One State Farm Plaza, Bloomington, IL 61710.

## JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over State Farm because State Farm is an insurance company authorized to do business in the State of Alabama, and, at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies to consumers in the State of Alabama.  Further, this Court has personal jurisdiction over State Farm because Defendant's conduct upon which the claims are based occurred in substantial part within this District and because Defendant committed the same wrongful acts to other class members in this judicial District.

16.    This Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiff, is a citizen of Alabama and the Defendant is a citizen of Illinois, thus meeting CAFA's minimal diversity requirement. Additionally, the proposed class consists of 100 or more members and the amount in controversy, when aggregated among a proposed class

of thousands, exceeds $5,000,000.00, exclusive of costs, interest, and fees that might be awarded.

17.   Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because the Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. State Farm has sufficient business and contacts for jurisdiction in this District.

## FACTUAL ALLEGATIONS

18.   State Farm is the largest automobile insurance carrier in the United States and in Alabama. Upon information and belief, State Farm insures approximately 94 million customers nationwide.

19.   Upon information and belief, approximately 540,000 of those customers reside in Alabama. Upon information and belief, State Farm pays more than 5,000 vehicle total loss claims per year in Alabama.

20.   For more than 25 years, State Farm has partnered with CCC Information Services, Inc.[3] ("CCC") to process automobile damage, repair, and total loss claims.  CCC is a technology company that provides software, data, and claims handling services to the automotive, insurance, and collision repair industries. Their flagship platform is CCC One, a cloud-based software suite used by State Farm in processing automotive damage, repair, and total loss claims.

---

[3] Also known as CCC Intelligent Solutions Inc.

21.    In 2020, State Farm announced it would begin using CCC One Market Value Reports exclusively to value vehicle total loss claims.

22.    State Farm uses the CCC One platform to create its CCC One Market Valuation Reports when presenting customers with the valuation of a total loss vehicle.

23.    The CCC One platform is customizable, allowing State Farm to choose the methodology and parameters to arrive at a valuation for a total loss vehicle.

24.    The CCC One reports indicate the value stated is "based on information provided to CCC by STATE FARM INSURANCE COMPANIES." Ex. A at 1.

25.    Under its uniform automobile insurance policy terms, once a customer's vehicle is declared a total loss, State Farm is required to pay the customer the pre-accident actual cash value.

## Plaintiff's Total Loss Claim

26.    On September 27, 2025, while driving his 2008 Toyota Tundra motor vehicle, Plaintiff James Goode was involved in a traffic accident in Shelby County, Alabama.

27.    At the time of the accident, the Plaintiff and the 2008 Toyota were insured under an auto policy underwritten by State Farm (Policy #1076467-SFP-01).

28.    On or about October 10, 2025, Plaintiff filed a claim with State Farm for damage to the 2008 Toyota resulting from the September 27, 2025, accident.

29.    Subsequently, State Farm determined the 2008 Toyota was a total loss and used its customized CCC One platform to calculate the pre-accident value of Plaintiff's 2008 Toyota.

30.    State Farm presented Plaintiff with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A.

31.    Using multiple comparable vehicles, the report stated the pre-accident "Base Vehicle Value" was $7,071.00 and State Farm paid Plaintiff's claim based on the CCC One Market Valuation Report.

32.    Unbeknownst to Plaintiff, in calculating the amount it was required to pay, State Farm artificially, arbitrarily, and wrongfully reduced the retail cost of each comparable vehicle used in the report by $929.00.  This amount was used in the calculation total loss vehicle "Base Value" listed on the first page of the CCC One Report. Ex. A at 1.

33.    As a result, before making adjustments to the Plaintiff's total loss vehicle for its condition, taxes, and the deductible, State Farm started with the Base Value amount of $7,071.00 when it should have started with a Base Value amount of $8,000.00.

34.    The CCC One Report applies a so-called "condition adjustment" downward of the same amount on each of the comparable vehicles. The deduction

8

is not connected to or in any way aligned with the condition of the total loss vehicle. Condition Adjustment is defined by the CCC One report as "setting the comparable vehicle to good condition, which the loss vehicle is also compared to." Ex. A at 10.

35.    By arbitrarily reducing the cost of comparable vehicles used in calculating the value of total loss vehicles, instead of using actual cash value, State Farm utilizes the condition adjustment on comparable vehicles and sets each comparable vehicle to a "good condition" to manipulate the data to pay the claim.  It then uses this manipulated data to compare vehicles to the loss vehicle in the vehicle condition section, resulting in a lower payment to the insured. Ex. A at 9 & 10.

36.    This function of State Farm's total loss valuation methodology using its customized CCC One platform is automated and results in a blanket reduction of the retail cost of each comparable vehicle by the same amount. Ex. A at 9 & 10.

37.    Here, State Farm reduced each comparable vehicle used to value Plaintiff James Goode's claim by $929.00, ostensibly calling it a "condition adjustment." Ex. A at 9 & 10.

38.    State Farm deducted $929.00 from the value of Plaintiff James Goode's total loss claim, which it apparently claimed was for "condition" despite also determining there were no appropriate condition deductions for his 2008 Toyota. *See* Ex. A at 10.

39. Although State Farm calls the reduction a "condition adjustment," it is not actually tied to the condition of the comparable vehicles or the total loss vehicle.

40. Before arriving at a "Base Vehicle Valuation" for Plaintiff James Goode's claim, State Farm systematically and uniformly reduced the retail cost of each comparable vehicle by $929.00. Ex. A at 1, 9 & 10.

41. By reducing the amount of the comparable vehicles by deducting an amount for an unexplained "condition," State Farm started with an incorrect "Base Vehicle Value" amount and as a result, Plaintiff James Goode's total loss claim was illegally reduced by $929.00, regardless of any other adjustments.

42. Applying this mislabeled deduction to total loss claims is State Farm's routine and deceptive business practice, and Plaintiff contests this wrongful deduction on behalf of himself and the class members.

43. Regardless of whether State Farm makes any adjustments to a claimant's total loss vehicle for condition, the Defendant still reduces the retail cost of the comparable vehicles used in calculating total loss claims.

44. The result of State Farm's systematic and uniform business practice of reducing the retail cost of each comparable vehicle and the resulting reduction of Plaintiff James Goode's total loss claim is in direct breach of the contract between State Farm and the Plaintiff. The same is true for all the class members, regardless of the amount of the reduction.

45. Upon information and belief, the data used to calculate the comparable vehicle deduction is sourced from a third-party or proprietary data collected by CCC Intelligent Solutions Inc. itself. Neither the source of the data nor its parameters is available to the public or disclosed to State Farm's total loss claimants. The data is unverifiable by a total loss claimant and upon information and belief, is not even maintained in State Farm's claim files.

46. State Farm's impermissible total loss valuation methodology of reducing the retail cost of comparable vehicles is not only disallowed by law, but also unsupported and arbitrary because it applies the same amount to each comparable vehicle regardless of the differences in mileage, options, or equipment among the comparable vehicles. *E.g.*, Ex. A at 10.

47. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in Alabama is uniform and a common business practice across all of the class members' total loss claims.

48. State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims also contravenes automobile appraisal industry standards in Alabama.

49. Upon information and belief, State Farm applies the same impermissible valuation methodology to all of the more than 5,000 vehicle total loss claims per year in Alabama.

50.     Although the class members are likely to be owed different amounts for the impermissible comparable vehicle retail cost reduction, those amounts can be easily and precisely determined from the CCC One Reports maintained in State Farm's business records. *E.g.*, Ex. A at 10.

51.     In Plaintiff James Goode's case, the impermissible reduction of the retail cost of comparable vehicles reduced the amount paid by State Farm to the Plaintiff by 13% of the correct pre-accident value of his 2008 Toyota.  Upon information and belief, the class-wide amounts owed equal 4% to 14% of each class member's total loss claim.

52.     On behalf of himself and on behalf of the proposed class, Plaintiff does not contest State Farm's representations of the original stated retail cost of comparable vehicles before the impermissible reductions.

53.      Plaintiff also does not contest the value assigned for options, mileage, equipment, or preexisting damages for his vehicle or the comparable vehicles stated in the CCC One Reports provided to him and the proposed class.  Rather, the Plaintiff only contests State Farm's blanket reduction of the retail cost of comparable vehicles on behalf of himself and the class.   Therefore, none of the total loss vehicles have to be revalued.  The Plaintiff is only seeking on behalf of himself and others the return of the line-item impermissible deduction.

54.    In short, by reducing the retail cost of the comparable vehicles used to arrive at a pre-accident value of total loss vehicles, State Farm determines the pre-accident value not by actual verifiable information and industry standards, but by an artificial, downwardly skewed, and deflated market of its own invention.

55.    Plaintiff requests that State Farm be required to pay the amount of the illegal reduction of the retail cost of comparable vehicles stated in the CCC One Reports provided to him and the class members.

## CLASS ACTION ALLEGATIONS

56.    The causes of action asserted herein are brought as a class action under the Federal Rules of Civil Procedure, Rules 23(a)(1)-(4) and Rules 23(b)(3) as more specifically set forth below. State Farm's conduct has been systemic and continuous and has affected a large number of State Farm automobile policyholders in Alabama.

57.    This action seeks to recover damages suffered by the Plaintiff, and the members of the proposed class (collectively "class members"), all insureds of State Farm whose vehicle total loss claims were calculated and paid by State Farm using a CCC One Report, where the retail cost of comparable vehicles was reduced to arrive at a pre-accident value.

58.    All proposed class members have fully complied with all pertinent policy provisions to receive payment under their uniform insurance policies with State Farm, and State Farm determined that coverage existed for the loss and

determined the claim to be a total loss. No further performance is required by any proposed class members to secure all available benefits provided by State Farm's policies.

## Class Certification Definition

59.    Plaintiff seeks certification of the following class:

All persons, businesses, and entities insured by State Farm Mutual Automobile Insurance Company on an automobile policy issued in the State of Alabama who received compensation on a claim for the total loss of their vehicles from the Defendant based on a total loss valuation generated using a CCC One Market Valuation Report, wherein the retail cost of comparable vehicles was reduced.

60.    Excluded from the Class are (a) the assigned Judge, the Judge's staff and family, and State Farm's employees, (b) claims where the insured submitted written evidence supporting a different valuation and the amount of that different valuation submitted by the insured was paid by State Farm to settle the total loss, and (c) claims where the insured executed a settlement agreement for a value agreed on between the insured and State Farm.

61.    Plaintiff reserves the right to amend the class definition as necessitated by subsequent discovery or evidence in this matter or as ordered or recommended by the Court.

## Numerosity

62.    Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all class members before the Court. Upon information

14

and belief, State Farm pays more than five thousand vehicle total loss claims to its insureds annually. Therefore, the proposed class consists of 100 or more members. The exact number of class members is unknown, but can be determined from the records maintained by the Defendant, which will allow the members of the proposed class, as well as those who are then excluded, to be easily identified.

## Typicality

63.     Plaintiff, James Goode, is typical of a member of the proposed class pursuant to Rule 23(a)(3). Plaintiff purchased a State Farm automobile policy, paid premiums, and made a claim for loss when his insured automobile was damaged. He filed a claim with State Farm and made his vehicle available for a valuation and payment of the loss. State Farm then elected to declare the vehicle a total loss, but underpaid the loss based upon a valuation State Farm generated using the CCC One Market Valuation Report program by reducing the retail cost of comparable vehicles in violation of Alabama law and in breach of State Farm's contractual obligations. Plaintiff's interest in obtaining compensation for his loss (the underpayment of his claim compared to the amount he would have received, but for the illegal reduction of the retail cost of comparable vehicles) is identical to those of other unnamed members of the class.

**Commonality**

64.     Pursuant to Rule 23(a)(2), there are questions of law and fact common to all members of the proposed class which predominate over any individual issues. Common questions of law and fact include, but are not limited to:

a.     Whether State Farm's business practice of reducing the retail cost of comparable vehicles in calculating the pre-accident value of total loss vehicles violated the contract between the parties.

b.     Whether State Farm's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in Alabama contravenes automobile appraisal industry standards.

c.     Whether Plaintiff and the class are entitled to an award of damages.

d.     The amount by which State Farm underpaid the total loss claims of the members of the class by reducing the retail cost of comparable vehicles in calculating the pre-accident value of the total loss vehicle.

e.     Whether the Plaintiff and the class are entitled to an award of attorney fees and costs.

**Adequacy Of Representation**

65.     Plaintiff has no interest adverse to the interests of other members of the proposed class and will fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

66.     Plaintiff has retained the undersigned counsel, who have been appointed as class counsel in other class actions by other federal district courts, including in the State of Alabama, and are experienced and competent in the prosecution of class actions and complex litigation, and have the experience necessary to prosecute this case and adequate resources to prosecute this claim.

**Superiority**

67.     Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, State Farm's practice of paying vehicle total loss claims in Alabama after calculating the amount by reducing the retail cost of comparable vehicles will continue, and the class members will continue to suffer damage and State Farm's conduct will proceed without an effective remedy.

68.     Individual class members of the proposed class have little interest or ability to prosecute an individual action due to the relatively small damages suffered

17

by each member of the proposed class and not knowing that State Farm's practices in paying their total loss claims did not comply with regulations and as such, that they were underpaid for their total loss claims.

69.    This action will allow for the orderly, fair, and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.  A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

70.    This action will present no difficulties which would impede its management by this Court as a class action, and a class action is the best available means by which Plaintiff and the members of the proposed class can seek redress for the harm caused to them by State Farm. An exact list of members of the proposed class can be generated from the business records of State Farm. State Farm's business records will show the amounts its insureds were underpaid for their total loss claims, including the line-item reduction of the retail cost of comparable vehicles.   Accordingly, both liability and damages can be presented and proven on a class-wide basis with common evidence and then allow a recovery to be efficiently distributed to the members of the class.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

71.    Plaintiff, on behalf of himself and other class members, brings this cause of action against the Defendant and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

72.    Plaintiff entered into a contract for automobile insurance with State Farm. He paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.   The same is true for all proposed class members.

73.    State Farm's uniform policy, at all relevant times herein, provided insurance coverage to Plaintiff for physical damage and the total loss of his motor vehicle and provided for the payment of the pre-accident actual cash value of his vehicle in the event of a total loss.

74.    The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in fulfilling the contract.

75.    Further, State Farm was required to follow Alabama law for the adjustment of a total loss claim of the Plaintiff's vehicle.   Under Alabama law, the actual cash value of vehicles is determined by using the retail cost of comparable vehicles.

76. On September 27, 2025, while driving his 2008 Toyota Tundra motor vehicle, Plaintiff was involved in a traffic accident in Shelby County, Alabama.

77. At the time of the accident, the Plaintiff and the 2008 Toyota were insured under an auto policy underwritten by Defendant, State Farm (Policy #1076467-SFP-01).

78. On October 10, 2025, Plaintiff filed a claim with State Farm for damage to the 2008 Toyota resulting from the accident.

79. Subsequently, State Farm determined the vehicle was a total loss and used its customized CCC One platform to calculate the pre-accident actual cash value of Plaintiff's vehicle.

80. State Farm presented Plaintiff with a CCC One Market Valuation Report purportedly stating the correct amount it was required to pay for the total loss. Ex. A at 1.

81. The report stated the "Base Vehicle Value" was $7,071.00 and State Farm paid Plaintiff's claim based on the CCC One Market Valuation Report.

82. Unbeknownst to Plaintiff, in calculating the amount it was required to pay, in violation of the contract and Alabama's total loss regulation, State Farm reduced the retail cost of comparable vehicles used in the calculation, which resulted in an impermissible reduction of the claim payment by $929.00.

83.    Despite having received a claim in compliance with the insurance policy terms, State Farm materially breached its contract with the Plaintiff in the adjustment of his vehicle total loss claim in the following respects:

a.    State Farm failed or refused to pay the pre-accident actual cash value of the Plaintiff's vehicle by reducing the retail cost of comparable vehicles and as a result, underpaid the claim;

b.    In other respects, to be discovered at trial.

84.    State Farm has engaged in the same conduct as to other similarly situated class members.

85.    As the direct and proximate result of the foregoing material breach by State Farm, the Plaintiff has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $929.00.

86.    As a direct and proximate result of the foregoing material breach by State Farm, each proposed class member has also been damaged by the amount of the reduction of the retail cost of comparable vehicles as indicated on each of their CCC One Reports.

**WHEREFORE**, Plaintiff and the proposed class members respectfully pray that the Court:

1.      Enter an order certifying this action as a class action, including certifying the cause of action for breach of contract under the appropriate subsection of Fed.R.Civ.P.23;

2.      Enter an order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the class;

3.      Enter judgment in favor of Plaintiff and the class members against State Farm for an amount to be determined at trial;

4.      Enter judgment in favor of Plaintiff individually and on behalf of all class members for compensatory damages resulting from State Farm's breach of contract in the amount of underpayment to Plaintiff as measured by the amount the payment was reduced by the arbitrary, impermissible reduction of the retail cost of comparable vehicles in calculating the value of his total loss claim;

5.      Enter an award of attorney fees and costs, as provided by law and/or as would be reasonable from a recovery of monies recovered for or benefits to the Plaintiff and class;

6.      Tax the cost of this action against State Farm;

7.      Grant such other and further relief as the Court may deem just and proper; and

8.      Grant the Plaintiff and class members a jury trial.

*/s/Jay Aughtman*
Joseph "Jay" H. Aughtman (ASB-8081-A43J)

*Attorney for the Plaintiff and Class*

OF COUNSEL:
**Aughtman Law Firm, LLC**
1772 Platt Place
Montgomery, AL 36117
T: (334) 215-9873
F: (334) 213-5663
jay@aughtmanlaw.com


/s/Aaron C. Hemmings
Aaron C. Hemmings (*pro hac vice* to be filed)
Kelly A. Stevens (*pro hac vice* to be filed)
*Attorneys for the Plaintiff and Class*

OF COUNSEL:
**Hemmings & Stevens, P.L.L.C.**
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
T: (919) 277-0161
F: (919) 277-0162
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com


**Plaintiff requests the Clerk of this Court to serve the Defendant via Certified Mail via the following:**

State Farm Mutual Automobile Insurance Company
c/o Corporation Service Company, Inc.
641 S. Lawrence Street
Montgomery, Alabama  36104